UNITED STATES *v.* WAN LEE.

*(District Court, D. Washington, N. D.* December 15, 1890.)

COURTS—DIVISION OF DISTRICT—JURORS.

The act subdividing the district of Washington, and fixing the times and places for holding terms of the circuit and district courts therein, in effect limits the jurisdiction so that crimes committed within the district are cognizable only in the courts for the respective divisions which include the places of their commission; and jurors must be drawn from the counties constituting the division for which the term is held at which they are required to serve.

*(Syllabus by the Court.)*

At Law. Indictment for breach of customs laws.

*P. H. Winston,* U. S. Atty., and *P. C. Sullivan,* Asst. U. S. Atty.
*W. H. White,* for defendant.

HANFORD, J. The defendant was indicted at the present term of this court for the crime of concealing smuggled opium, under section 3082, Rev. St. Having entered his plea of not guilty to the indictment, the case was brought on for trial, and thereupon, when the jury was called, the defendant interposed a challenge to the array on the ground that all the petit jurors in attendance at this term had been drawn and summoned from the northern division of this district, and not from the district at large. The court having denied this challenge, and the jury having been sworn to try the case, the defendant now objects to the introduction of any testimony, on the ground that the indictment is illegal and void upon its face, for that it does not purport to have been found by a lawful grand jury. The point of the objection is that the grand jurors were drawn exclusively from the northern division of the district, and they are described in the indictment as—

"The grand jurors of the United States of America, in and for the northern division of the district of Washington, duly impaneled, sworn, and charged to inquire of all offenses against the laws of the United States committed within the northern division of the district of Washington aforesaid."

It has been the practice, as the records show, to draw the jurors for each term of court from a jury-box prepared for each division of the district, containing names selected from inhabitants only of that division of the district for which the box is used; and the grand juries at each term have, under the instructions of the court, confined their inquiries to offenses committed within the division, or upon the high seas outside of the limits of any judicial district of the United States. It is claimed that this practice is erroneous, and is founded upon a misconstruction of the act of congress providing for the terms of the United States circuit and district courts in this district. By the act of congress fixing the times and places of holding the United States courts in the state of Washington, (26 U. S. St. p. 45,) the state is declared to constitute one judicial district. For the purpose of holding terms of court, this district is subdivided into four divisions. Certain named counties constitute the northern division so denominated in the act, and the courts

for said division are to hold their terms at Seattle. It is perfectly apparent on the face of the act that its only object is to bring the seat of justice near to the people. In a district so large as this, it would be a grievous burden upon the people to require litigants, jurors, and witnesses to leave their homes and occupations and travel to a remote place in the state to attend the court, as would be necessary in numerous instances if but one place in the state were provided for the sitting of the court. To relieve the people of this burden, the act was passed, and the only possible construction that can be given to it is the one that limits the jurisdiction of the court, when holding a term, to the territorial limits of the division for which that term is provided; and by a necessary implication the grand jury summoned to attend each term is a grand jury of the district for that division in and for which the term is held, just as the grand jury is denominated in this indictment. The court can only bring to trial at any term persons accused of committing offenses within the division; and the jurors, grand and petit, should, to accomplish the purpose of this act, be summoned only from that part of the district. This construction is in harmony with the provisions of section 802 of the Revised Statutes, and with the ancient customs and laws of our parent nation, as well as the constitutional guaranties of our own country. At common law, grand juries were convened in each county to attend the sessions of peace, and of oyer and terminer, held therein by the court of king's bench, and it was a grand jury of the county, and the sessions of court were held for the county, although the court was ordained and established for the entire kingdom. Under the act of congress, as a mere matter of convenience, several counties are grouped together, and a term of court is provided to be held at one place for all, and to answer the same purpose as to each, as if held in each. By analogy to the practice under the common law, the grand jury should be made up of qualified men residing in the division; and when organized it constitutes a grand jury for the division, just as it would be a grand jury for a single county if the term of court were for a single county. There is therefore nothing to be found in the principles of the common law to support the idea that a United States grand jury in this district must be drawn from the body of the district in its entirety, or that it must be denominated a grand jury of the district. There is no statute prescribing such a practice, and, with all due deference to the arguments of the learned counsel for the defendant, not a single reason has been suggested why it should be so. On the contrary, it would be utterly unreasonable and absurd to hold that, notwithstanding the manifest purpose of congress in enacting this law, we must still bring men from Spokane county to serve as jurors at Seattle, and take King county men to serve at Spokane Falls, and have the rights of citizens of Tacoma passed upon by men of Seattle; or that this defendant, a Chinaman, cannot have justice meted out to him in a lawful way without having jurors to try his case brought from Tacoma. In other districts it is often necessary for the expeditious dispatch of business to secure jurors from localities near the places where the courts are held.

This mode of procedure is quite common, and is authorized by section 802, Rev. St. I cannot believe that the validity of such procedure depends upon the fiction maintained in the record by describing the jurors as if they were drawn from the body of the district.

The northern district of New York is not subdivided, but terms of court are held at Buffalo, Albany, Rochester, and several other places in the district. I am reliably informed that it is the practice in that district to draw the jurors from the lists of qualified persons prepared for the state courts by county officers, so that the entire panel of jurors to serve for a term may be, and often is, composed of men all of whom are residents of a single county; and such juries have not heretofore been supposed to be unconstitutional or illegal, although the truth as to the territory from whence they come has not been covered by even a fiction in the record. All that the defendant can claim as a constitutional right is to have a jury of the district to try his case; that is, a jury every member of which resides within the district. He has no right to insist that every part of the district shall be represented in the make-up of the jury by residents of each place or locality. That would be impossible in any case.

The position taken that the act of 1890 was intended only to provide terms of court for the trial of civil cases is in my opinion untenable. The sixth section of the act repeals the only other statute relating to terms of this court, and we are without any law prescribing the times or places of holding terms for the trials of criminal cases, unless the terms provided for by the act of 1890 are general terms, for the transaction of all business of the court. The fourth section prescribes a rule by which to determine the venue of civil cases, and requires all issues of fact in civil causes to be tried in the division where the defendant, or one of several defendants, resides, unless, by consent of both parties, the case shall be removed to some other division. By implication, this section allows civil cases, with the consent of both parties, to be removed from one division for trial in another. I think the effect of this section is merely to fix a special rule for civil cases, and that it does not so limit the entire act as to make it applicable only to civil cases. Section 730, Rev. St., does not affect the question. That section gives the rule by which to locate the jurisdiction in criminal cases where the offenses are committed outside of any district. It would bear upon this case in exactly the same way if all the grand and petit jurors drawn to serve in this court were nominally and really drawn from the body of the district; for, although that section does confer upon the court and the grand jury jurisdiction to deal with criminal offenses committed out of the division in which the court may be at the time in session, it confers the same jurisdiction over offenses committed wholly without the district as well, and it makes no requirement as to the jurors who are to participate in the proceedings in such cases. The allegation of the indictment descriptive of the grand jury as being "sworn and charged to inquire of all offenses against the laws of the United States committed within the northern division of the district of Washington" does not make the grand jury illegal, nor the indictment void. If we assume that a properly constituted grand jury

would have the widest range of jurisdiction contended for, the offense charged against this defendant would be within its jurisdiction; and, if it is lawful to confine the jurisdiction within the narrower limits described in the indictment, the offense charged would still be within its jurisdiction. In whatever light we view the case, it is within the jurisdiction of this court, and of such a grand jury as by law should have been organized to pass upon it. The indictment is assailed, not because the case is not within the jurisdiction of the court or of the grand jury, but because the jurisdiction conferred by law is broader and more extended than the indictment alleges it to be. But I hold that where a court keeps within bounds, its judicial acts are not void because of its failure to assert all of the jurisdiction given to it by law; and I hold that the proceedings of the grand juries of this court heretofore organized are not void, even though the court should have erred in so interpreting the law as to restrain them from inquiring of offenses committed elsewhere in the district than within the division from which they were drawn. The authorities, so far as I have been able to discover them, do not throw a very clear light upon the subject. From the opinion of Judge HUGHES in the case of *U. S.* v. *Munford*, 16 Fed. Rep. 164, I infer that it has been the practice in the eastern district of Virginia to draw the jurors from the whole district, but to have separate jury-boxes at each of the places of holding court; but the practice of that district cannot guide us in this, because that district is not cut into divisions by a statute. Although section 572, Rev. St., requires terms to be held at different places in the district, it does not specify that the courts held at either place shall be for certain counties, or for any part of the district. In *U. S.* v. *Berry*, 24 Fed. Rep. 780, Judge KREKEL reached the conclusion that a criminal case could only be proceeded with in the division of the district wherein the offense was committed. In *U. S.* v. *Chaires*, 40 Fed. Rep. 820, Judges PARDEE and SWAYNE held that a plea to an indictment averring that the names of the persons placed by the jury commissioner and the clerk in the box were not drawn from the entire territory within the northern district of Florida, but were drawn from an alleged division of the district, showed no injury or prejudice to the rights of the defendants, and was bad in form and substance. Recently, in the case of *U. S.* v. *Dixon*, *ante*, 401, Judge HOFFMAN has given a decision which is directly contrary to the conclusion I have arrived at in this case. While conceding much for the experience and learning of that eminent jurist, I claim that the weight of the authorities tends rather to support than to bear against me in upholding the validity of this indictment.